CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

MAR 15 2006

JOHN F. CORCORAN, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| OMORO RAGLAND, ) | |
|     Plaintiff, ) | Civil Action No. 7:02-cv-00786 |
| ) | |
| v. ) | SUPPLEMENTAL OPINION |
| ) | |
| RON ANGELONE, et al., ) | By: Hon. James C. Turk |
|     Defendants. ) | Senior United States District Judge |

By memorandum opinion and order issued on March 14, 2006, the court granted defendants' motions for summary judgment on the ground that enforcement of Virginia Department of Corrections ("VDOC") grooming policy, Division Operating Procedure ("DOP") 864, against Plaintiff Omoro Ragland does not violate his rights under the Constitution or the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, et. seq. After issuing the judgment, the court became aware of relevant decisions by the United States Court of Appeals for the Fourth Circuit and the United States District Court for the Eastern District of Virginia that were not cited by any of the parties in the case: Gallahan v. Hollyfield, 516 F. Supp. 1004 (E.D. Va. 1981), aff'd, 670 F.2d 1345 (4th Cir. 1982). The court thus finds it appropriate to issue this brief, supplemental opinion.

Plaintiff Gallahan, a Native American inmate, brought a civil action under 42 U.S.C. § 1983, claiming that a Virginia prison grooming policy violated his constitutional right to free exercise of his religious beliefs. 670 F.2d at 1346. The tenets of Gallahan's Cherokee religion required that he not cut his hair. Id. In 1980, a Virginia prison regulation, Division of Institutional Services Guideline ("guideline") 864, required all inmates to keep their hair trimmed so that it did not extend below the top of the collar. Id. When Gallahan entered a

1

Virginia prison, officials compelled him to cut his hair so that it complied with guideline 864, and Gallahan thereafter filed suit. Id. Prison officials moved for summary judgment, arguing that plaintiff did not have a sincere religious belief and that long hair could be used to conceal weapons, obscure facial identification, and cause sanitation problems if not kept clean. 516 F. Supp. at 1006. After taking plaintiff's deposition, the district court found that Gallahan had a sincere religious belief requiring him to wear his hair long and that as applied in Gallahan's case, the grooming policy violated the First Amendment; therefore, the court enjoined the defendants and their successors from cutting plaintiff's hair. Id.

The Fourth Circuit affirmed, holding that "[p]rison regulations which affect a prisoner's right to worship must be reasonably and substantially justified by considerations of prison discipline and order and further must be in a form substantially warranted by the requirements of prison safety and order." 670 F.2d at 1346. The court noted that the defendants' asserted reasons for the grooming policy were "either overly broad or lacking in substance." Id. In support of their motion for summary judgment, defendants had not offered any empirical data demonstrating the compelling interests the state had in enforcement of the grooming policy, although they later asserted that such data was available. Gallahan, 516 F. Supp. at 1007 (order on motion to reconsider). Defendants also offered no evidence that there were no less restrictive alternatives to the regulation. Id.

The Gallahan case reflects the Fourth Circuit's efforts to protect the religious rights of inmates under the strict scrutiny test of Sherbert v. Verner, 374 U.S. 398, 403 (1963), while at the same time recognizing the expertise and needs of professional prison officials in addressing difficult issues of prison administration, such as security and order. Gallahan, 670 F.2d at 1346,

2

citing Sweet v. South Carolina Dept. of Corr., 529 F.2d 854, 863 (4th Cir. 1975); Brown v. Payton, 437 F.2d 1228, 1231 (1971); Abernathy v. Cunningham, 393 F.2d 775 (4th Cir. 1968). See also Pell v. Procunier, 417 U.S. 817, 827 (1974) (mandating court deference to expert judgment of prison officials in matters of prison administration unless substantial evidence in the record indicates their response is exaggerated). In these cases, the Fourth Circuit recognized the "probative value of prison officials' judgment," but required more than conclusory opinions from such officials; rather, the court in these cases sought specific, sworn affidavits, other evidence, and in some cases, testimony, demonstrating specifically that a prison regulation was justified by superior state interest and that no less restrictive means would address those interests. See, e.g., Sweet, 529 F.2d. at 859, 863; Brown, 437 F.2d at 1231-32; Gallahan, 516 F. Supp. at 1007.

The Fourth Circuit later held that the constitutional test applied in the 1982 Gallahan case had been abrogated by subsequent Supreme Court cases that eliminated strict scrutiny for First Amendment claims in the prison context. Hines v. South Carolina Dept. of Corr., 148 F.3d 353, 358 (4th Cir. 1998), citing Employment Division, Dep't of Human Resources v. Smith, 494 U.S. 872, 876-79 (1990) (formulating a "generally applicable regulation" test); O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (formulating a "reasonably related to legitimate penological interests" test). RLUIPA returns the strict scrutiny test to prison litigation. It prohibits prison officials from enacting regulations, including rules of general applicability, that impose a "substantial burden on the religious exercise" of a prisoner unless officials demonstrate that imposition of that burden furthers "a compelling governmental interest" by "the least restrictive means." § 2000cc-1(a)(1)-(2). Thus, Gallahan and related cases are instructive for district courts in the Fourth Circuit when applying the strict scrutiny test of RLUIPA while also deferring as

Case 7:02-cv-00786-JCT   Document 40   Filed 03/15/06   Page 3 of 4   Pageid#: 145

required to the expertise of prison officials. See Cutter v. Wilkinson, 125 S. Ct. 2113, 2123 (2005)(noting that courts applying RLUIPA must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources") (citations to congressional records omitted).

Under these principles, Ragland's case is clearly distinguishable from Gallahan's case. First, unlike the defendants in Gallahan, the defendants in Ragland's case offered sworn affidavits, stating very specific explanations and anecdotal evidence to establish the compelling interests furthered by DOP 864 and to demonstrate that suggested, less restrictive alternatives would not address those risks. Second, unlike Gallahan, Ragland was not forced to cut his hair or beard. He continues to practice this aspect of his religious beliefs. This fact alone weighs heavily in favor of finding that the restrictions are proper. Pell, 417 U.S. at 828. Although Ragland would like to have his long hair while also enjoying the privileges of general population status, the defendants have demonstrated through specific, expert opinion that the existing policy of uniformly housing all long-haired inmates under segregation restrictions is the only workable way to control the compelling risks that the hair presents. Ragland has not offered substantial evidence that prison officials' response to these risks is exaggerated. On this evidence, the court concluded in its previous opinion, and continues to believe, that DOP 864 does not violate Ragland's rights under RLUIPA. Therefore, the court fully reaffirms the holding of the March 14, 2006, opinion and order. An appropriate order will issue this day.

ENTER: This 15th day of March, 2006.

_____
Senior United States District Judge

4